**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**ATHENS DIVISION**

| | |
|---|---|
| **MARY DE LEON**, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>**MEDLINK GEORGIA, INC**., a Georgia corporation,<br><br>and<br><br>DOES 1-10,<br><br>Defendant. | Case No.: _______________<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Mary De Leon ("Plaintiff"), individually and on behalf of all others similarly situated ("Class Members"), brings this action against Defendant Medlink Georgia, Inc. ("MedLink") and Does 1 through 10, inclusive ("Defendant") based upon information and belief and her own personal knowledge, and based upon, *inter alia*, the investigations of her attorneys.

## NATURE OF THE ACTION

1. MedLink is a provider of primary and preventive care medical services and is a covered entity under HIPAA. As a requirement to provide these services, Defendant requires that its patients provide it with their personal identifying information ("PII")[1] and protected health information ("PHI") (collectively, PHI and PII will be referred to as "Private Information.[2] As a

[1] PII generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual. PII also is generally defined to include certain identifiers that do not on its face name an individual, but that are particularly sensitive and/or valuable if in the wrong hands (for example, Social Security numbers, passport numbers, driver's license numbers, financial account numbers, etc.).

[2] As defined by 45 C.F.R. § 160.103, PHI is defined as any individually identifiable health information that is transmitted or maintained by electronic media, or transmitted or maintained in any other form or medium.

result, Defendant collects, aggregates and stores the Private Information of its patients in the regular course of business.

2. Recently, an unauthorized third-party hacker group gained access to Defendant's data servers and accessed, viewed and exfiltrated the sensitive Private Information of its patients, including Plaintiff and Class Members (the "Data Breach"). On or about June 30, 2026, the cybercriminal group known as CMDOrganization claimed responsibility for the Data Breach and listed MedLink on the group's dark-web extortion site.[3]

3. The information stolen as a result of the Data Breach included, *inter alia*, the data of Defendant's patients, including Private Information of Plaintiff and putative Class Members.

4. The Private Information that MedLink collects from its patients are subject to a framework of federal and state statutes in the United States. These regulations are designed to protect the privacy and security of sensitive information, particularly within healthcare and related industries.

5. Under statutes and regulations, MedLink had a duty to implement reasonable, adequate industry-standard data security policies safeguards to protect patient Private Information from unauthorized disclosure. MedLink acknowledges these duties in, *inter alia*, its public-facing Notice of Privacy Practices, wherein it states: that Defendant was "required by State and Federal law to" "maintain the privacy of health information that identified you" and "[a]bide by the terms of this notice" and that it would "notify you in the event there is a breach of unsecured PHI."[4]

6. Plaintiff, individually and on behalf of those Class Members, brings this action to secure redress against Defendant for the reckless and negligent violation of her privacy rights. Plaintiff and Class Members are current or former patients of Defendant who had their Private Information collected, stored, and ultimately breached by Defendant. Plaintiff and Class Members reasonably expected that Defendant would adhere to statute and regulation and maintain

[3] https://www.hookphish.com/blog/ransomware-group-cmdorganization-hits-medlink-georgia/ (last visited July 6, 2026).

[4] MedLink Georgia Privacy Policy, available at: https://medlinkga.org/patient-resources/ and https://medlinkga.org/wp-content/uploads/2024/07/Notice-of-Privacy-Practices-To-Give-To-Patients-1.pdf (last accessed July 6, 2026).

reasonable security to protect their Private Information. Had Plaintiff and Class Members known that Defendant would not do so, they would not have provided Defendant with their sensitive Private Information.

7. Plaintiff and Class Members have suffered injuries and damages. As a result of Defendant's wrongful actions and inactions, Plaintiff's and Class Members' Private Information has been compromised. Plaintiff and Class Members have had their privacy rights violated and are now exposed to a heightened significant risk of identity theft and credit fraud for the remainder of their lifetimes. Plaintiff and Class Members must now spend time and money on prophylactic measures, such as increased monitoring of their personal and financial accounts and the purchase of credit monitoring services, to protect themselves from future loss. Plaintiff and Class Members have also lost the value of their Private Information, as well as the benefit of their bargains with Defendant.

8. To date, there is no indication that Defendant have provided notice of the Data Breach to affected individuals.

9. As a result of Defendant's wrongful actions and inactions, patient information was stolen. Plaintiff and Class Members who have had their Private Information compromised have had their privacy rights violated, have been exposed to the risk of fraud and identity theft, and have otherwise suffered damages. Plaintiff and Class Members bring this action to secure redress against Defendant for its reckless and negligent violation of their Private Information.

## THE PARTIES

10. Plaintiff Mary De Leon is a Georgia citizen residing in Atlanta, Georgia. At all relevant times, Plaintiff was a patient of MedLink who was required to provide her sensitive Private Information to Defendant in exchange for their services.

11. As a result of the Data Breach, Plaintiff has been placed at an increased risk of credit and identity fraud, and as a result has spent time dealing with the consequences of the Data Breach, which included and continues to include, time spent verifying the legitimacy and impact of the Data Breach, exploring credit monitoring and identity theft insurance options, monitoring her personal and financial accounts and seeking counsel regarding her options for remedying

and/or mitigating the effects of the Data Breach. This time has been lost forever and cannot be recaptured.

12. Plaintiff has suffered actual injury in the form of damage to and diminution in the value of her lost Private Information—a form of intangible property Plaintiff entrusted to Defendant, which was compromised in and as a result of the Data Breach.

13. Plaintiff suffered actual injury in the form of the lost benefit of her bargain with Defendant. Plaintiff entered into an agreement with and provided payment to Defendant under the reasonable but mistaken belief that said payment would be made towards maintaining reasonable and adequate data security safeguards to protect the Private Information she entrusted to Defendant. Plaintiff would not have entered into such an agreement and would not have paid Defendant the amount that she paid had she known that Defendant would not reasonably and adequately protect her Private Information. Plaintiff has thus suffered actual damages in an amount at least equal to the difference in value between the services which include reasonable and adequate data security they bargained for and the services they received which did not.

14. MedLink is a non-profit organization organized under the laws of the State of Georgia, with its principal place of business at 6754 Highway 72, Colbert, Georgia, 30628. Defendant MedLink's registered agent for service of process is Dave Ward who can be served at 11 Charlie Morris Road, Colbert, Georgia, 30628.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this action under 28 U.S.C.§ 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendant.

16. This Court has personal jurisdiction over Defendant because its principal place of business is in this District, it regularly conducts business in Georgia, and the acts and omissions giving rise to Plaintiff's claims occurred in and emanated from this District.

17. Venue is proper under 28 U.S.C § 1391(b)(1) because Defendant resides in this District and substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

### A. The Data Breach and Defendant's Failure to Provide Reasonable, Adequate and Compliant Data Security as Promised

18. Upon information and belief, Defendant's internal data servers were breached by unauthorized third-party hackers. This group gained access to, viewed and acquired the sensitive Private Information of Defendant's patients.

19. On or about June 30, 2026, the cybercriminal group known as CMDOrganization has claimed responsibility for the Data Breach and listed MedLink on the group's dark-web extortion site. This unauthorized group utilizes double extortion ransomware[5]—a tactic wherein not only is a victim's data but also accessed, acquired and exfiltrated. The third-party hackers then demand a ransom from the victim to decrypt the victim's systems coupled with threats to leak, publish or to sell the data on the dark web if their demands are not met.[6], [7]

20. Upon information and belief, CMDOrganization threatened to publish a full leak, including private information of Plaintiff and Class Members, unless a MedLink representative contacted the group.

21. The Data Breach was caused by ransomware, a type of malicious software that gains access to and encrypts a victim's data and/or locks the victim out of the victim's systems. Once ransomware has been successfully installed on a victim's data servers, a ransom payment is subsequently demanded to restore access and to prevent the release of the stolen data.

---

[5] "*What is Double Extortion Ransomware?*, SentinelOne (Aug. 11, 2025), *https://www.sentinelone.com/cybersecurity-101/threat-intelligence/what-is-double-extortion/* (last visited Feb. 24, 2026).

[6] https://www.hookphish.com/blog/ransomware-group-cmdorganization-hits-medlink-georgia/ (last visited July 6, 2026).

[7] CMD Organization – New Ransomware Operator Moves to Place Public Bidding Wars on Ransomed Data (May 14, 2026), available at: https://labs.beazley.security/articles/cmd-organization-new-ransomware-operator-moves-to-place-public-bidding-wars-on-ransomed-data (last visited July 6, 2026).

22. Ransomware is typically spread through phishing, malicious links, or compromised remote desktop protocols. It is also "highly preventable"[8] through the implementation of reasonable and adequate data security procedures—such as using reputable security software, maintaining software updates, maintaining data backups, and proper employee cybersecurity training. The fact that the Data Breach was caused by ransomware confirms that Defendant failed to implement reasonable and adequate data security safeguards.

23. Upon information and belief, the Data Breach occurred as a result of Defendant's failure to implement reasonable, adequate and complaint data security to protect its members' Private Information. Had Defendant not failed to implement such data security, the Data Breach would not have occurred.

24. Defendant recognized their duty to provide reasonable data security for Plaintiff's and Class Members' Private Information that they collect and store as part of their business practices. Defendant made promises to do so in, *inter alia*, its public-facing Notice of Privacy Practices. Despite this, Defendant did not implement reasonable data security safeguards and protocols to protect Plaintiff's and Class Members' Private Information and instead allowed it to be disclosed to unauthorized third-party hackers without authorization or consent.

**B. Defendant's Obligation to Protect Patient Private Information**

25. Defendant were required to "implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

26. Additionally, as a covered entity under the Health Insurance Portability and Accountability Act of 1996 (HIPAA), Pub. L. No. 104-191, 110 Stat. 1936, 45 C.F.R. § 160, et seq., Defendant hold a statutory duty under HIPAA and other federal and state statutes to safeguard Plaintiff's and Class Members' Private Information.

[8] Dr. Alan Shark, *Ransomware – Both Terrible and Preventable*, NACo (May 30, 2017), https://www.naco.org/articles/ransomware-%E2%80%94-both-terrible-and-preventable#:~:text=This%20ransomware%20threat%20is%20also,better%20than%20any%20shortsighted%20punishment (last visited Feb. 24, 2026).

27. Under the HIPAA Privacy Rule, Defendant are required to:

a. Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains or transmits;

b. Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

c. Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

d. Ensure compliance by their workforce.

(45 C.F.R. § 164. 306 (a).)

28. The HIPAA Privacy Rule also requires Defendant to "review and modify the security measures implemented…as needed to continue provision of reasonable and appropriate protection of electronic protected health information" under 45 C.F.R. § 164.306(e) and to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights" under 45 C.F.R. § 164.312 (a)(1).

29. Further, the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45 prohibits Defendant from engaging in "unfair or deceptive acts or practices affecting commerce." The Federal Trade Commission ("FTC") has found that a company's failure to maintain reasonable and appropriate data security for the consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp.* (3rd Cir. 2015) 799 F.3d 236, 243.

30. Defendant failed to comply with each of these state and federal statutes by failing to implement and maintain reasonable security procedures to protect Plaintiff's and Class Members' Private Information from unauthorized disclosure.

**C. Applicable Standards of Care**

31. In addition to their obligations under state and federal law, Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in Defendant's possession from

being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Plaintiff and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer system and networks, and the personnel responsible for them, adequately protected the Private Information of Plaintiff and Class Members.

32. Defendant owed a duty to Plaintiff and Class Members to design, maintain, and test its computer system to ensure that the Private Information in Defendant's possession was adequately secured and protected.

33. Defendant owed a duty to Plaintiff and Class Members to create and implement reasonable data security practices and procedures to protect the Private Information, including adequately training its employees and others on how to adequately protect Private Information.

34. Defendant owed a duty to Plaintiff and Class Members to disclose if Defendant's computer systems and data security practices were inadequate to safeguard individuals' Private Information from unauthorized disclosure because such an inadequacy would be a material fact in the decision to provide or entrust its Private Information to Defendant.

35. Defendant owed a duty of care to Plaintiff and Class Members because they were foreseeable and probable victims of any inadequate data security practices. Defendant received Private Information from Plaintiff and Class Members with the understanding that Plaintiff and Class Members expected their Private Information to be protected from disclosure. Defendant knew that the unauthorized disclosure of its Private Information would cause Plaintiff and Class Members to incur damages.

**D. The Value of the Stolen Private Information**

36. While the greater efficiency of electronic records translates to cost savings for entities such as Defendant, it also comes with the risk of privacy breaches. These electronic health records contain a plethora of sensitive information (e.g., patient data, patient diagnosis, lab results, medical prescriptions, treatment plans, etc.) that is valuable to cybercriminals. One patient's complete record can be sold for hundreds of dollars on the dark web. As such, Private Information is a valuable commodity for which a "cyber black market" exists in which criminals

openly post stolen payment card numbers, Social Security numbers and other personal information on a number of underground internet websites.

37. The high value of Private Information to criminals is further evidenced by the prices they will pay for them through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[9] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[10] Criminals can also purchase access to entire company data breaches from $999 to $4,995.[11]

38. Between 2005 and 2019, at least 249 million people were affected by healthcare data breaches.[12] Indeed, during 2019 alone, over 41 million healthcare records were exposed, stolen, or unlawfully disclosed in 505 data breaches.[13] In short, these sorts of data breaches are increasingly common, especially among healthcare systems, which account for 30.03 % of overall health data breaches, according to cybersecurity firm Tenable.[14]

39. These criminal activities have and will result in devastating financial and personal losses to Plaintiff and Class Members. For example, it is believed that certain Private Information compromised in the 2017 Equifax data breach was being used three years later by identity thieves

---

9 Anita George, *Your personal data is for sale on the dark web. Here's how much it costs,* DIGITAL TRENDS (Oct. 16, 2019), https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last visited Feb. 24, 2026).

10 Ben Luthi, *Here's What Your Data Sells for on the Dark Web*, EXPERIAN (June 30, 2025), https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited Feb. 24, 2026).

11 *In the Dark*, VPNOVERVIEW, *https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/* (last visited Feb. 24, 2026).

12 Adil Hussain Seh, et al., *Healthcare Data Breaches: Insights and Implications*, MDPI (May 13, 2020), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7349636/#B5-healthcare-08-00133 (last visited Feb. 24, 2026).

13 Steve Alder, *December 2019 Healthcare Data Breach Report*, THE HIPAA JOURNAL (Jan. 21, 2020), https://www.hipaajournal.com/december-2019-healthcare-data-breach-report/ (last visited Feb. 24, 2026).

14 Rody Quinlan, *Healthcare Security: Ransomware Plays a Prominent Role in COVID-19 Era Breaches*, TENABLE (Mar. 10, 2021), https://www.tenable.com/blog/healthcare-security-ransomware-plays-a-prominent-role-in-covid-19-era-breaches (last visited Feb. 24, 2026).

to apply for COVID-19-related benefits in the state of Oklahoma. Such fraud will be an omnipresent threat for Plaintiff and Class Members for the rest of their lives. They will need to remain constantly vigilant.

40. The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."

41. Identity thieves can use Private Information, such as that of Plaintiff and Class Members which Defendant failed to keep secure, to perpetrate a variety of crimes that harm victims. For instance, identity thieves may commit various types of government fraud such as immigration fraud, obtaining a driver's license or identification card in the victim's name but with another's picture, using the victim's information to obtain government benefits or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

42. The ramifications of Defendant's failure to keep Plaintiff's and Class Members' Private Information secure are long-lasting and severe. Once Private Information is stolen, particularly identification numbers, fraudulent use of that information and damage to victims may continue for years. Indeed, Plaintiff's and Class Members' Private Information were taken by hackers to engage in identity theft or to sell it to other criminals who purchase the Private Information for that purpose. The fraudulent activity resulting from the Data Breach may not come to light for years.

43. There may be a time lag between when harm occurs versus when it is discovered and also between when Private Information are stolen and when they are used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm. [15]

44. The harm to Plaintiff and Class Members is especially acute given the nature of the leaked data. Medical identity theft is one of the most common, most expensive and most difficult-to-prevent forms of identity theft. According to Kaiser Health News, "medical-related identity theft accounted for 43 percent of all identity thefts reported in the United States in 2013," which is more than identity thefts involving banking and finance, the government and the military, or education. [16]

45. "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities." [17]

46. When cybercriminals access financial information, healthcare and medical information and other personally sensitive data—as they did here—there is no limit to the amount of fraud to which Defendant may have exposed Plaintiff and Class Members.

47. A study by Experian found that the average total cost of medical identity theft is "about $20,000" per incident, and that a majority of victims of medical identity theft were forced

---

[15] *Identity Theft and the Value of Your Personal Data*, TREND MICRO (Apr. 30, 2015), https://www.trendmicro.com/vinfo/us/security/news/online-privacy/identity-theft-and-the-value-of-your-personal-data (Feb. 24, 2026).

[16] United States Government Accountability Office, *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, REPORT TO CONGRESSIONAL REQUESTERS at 29 (June 2007), http://www.gao.gov/new.items/d07737.pdf

[17] *Id*.

to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[18] Almost half of medical identity theft victims lose their healthcare coverage as a result of the incident, while nearly one-third saw their insurance premiums rise, and 40% were never able to resolve their identity theft at all.[19]

48. And data breaches are preventable.[20] As Lucy Thompson wrote in the DATA BREACH AND ENCRYPTION HANDBOOK, "[i]n almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[21] She added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised."[22]

49. Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules and procedures. Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a *data breach never occurs*.[23]

50. Here, Defendant knew of the importance of safeguarding Private Information and of the foreseeable consequences that would occur if Plaintiff's and Class Members' Private Information was stolen, including the significant costs that would be placed on Plaintiff and Class Members as a result of a breach of this magnitude. As detailed above, Defendant knew or should have known that the development and use of such protocols were necessary to fulfill their statutory and common law duties to Plaintiff and Class Members. Its failure to do so is therefore intentional, willful, reckless and/or grossly negligent.

---

[18] *See* Elinor Mills, *Study: Medical Identity Theft is Costly for Victims*, CNET (Mar. 3, 2010), https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/ (last visited Feb. 24, 2026).

[19] *Id.*; *see also* Louis DeNicola, *What Is Medical Identity Theft*, EXPERIAN (Jul. 26, 2024) https://www.experian.com/blogs/ask-experian/healthcare-data-breach-what-to-know-about-them-and-what-to-do-after-one/ (last visited Feb. 24, 2026).

[20] Lucy Thompson, *Despite the Alarming Trends, Data Breaches Are Preventable*, in DATA BREACH AND ENCRYPTION HANDBOOK (2011).

[21] *Id.* at 17.

[22] *Id.* at 28.

[23] *Id.*

51. Defendant disregarded the rights of Plaintiff and Class Members by, *inter alia*, (i) intentionally, willfully, recklessly and/or negligently failing to take adequate and reasonable measures to ensure that their network servers were protected against unauthorized intrusions, (ii) failing to disclose that Defendant did not have adequately robust security protocols and training practices in place to adequately safeguard Plaintiff's and Class Members' Private Information, (iii) failing to take standard and reasonably available steps to prevent the Data Breach, (iv) concealing the existence and extent of the Data Breach for an unreasonable duration of time, and (v) failing to provide Plaintiff and Class Members prompt and accurate notice of the Data Breach.

**E. Plaintiff and Class Members Suffered Damages**

52. The unauthorized exposure of Plaintiff's and Class Members' Private Information was a direct and proximate result of Defendant's failure to properly safeguard and protect Plaintiff's and Class Members' Private Information from unauthorized access, use, and disclosure, as required by state and federal law.

53. Additionally, the Data Breach was also a result of Defendant's failure to establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiff's and Class Members' Private Information in order to protect against reasonably foreseeable threats to the security or integrity of such information, also required by their contracts and federal statute and regulation.

54. Plaintiff's and Class Members' Private Information is private and sensitive in nature and was inadequately protected by Defendant. Defendant did not obtain Plaintiff's and Class Members' consent to disclose their Private Information, as they promised to do and as required by applicable law and industry standards. As a result, Plaintiff and Class Members have been placed at an increased risk of credit and identity fraud, for which they must now spend increased time and effort to monitor their personal and financial accounts to prevent and mitigate the resulting misuse that will almost certainly occur.

55. As a direct and proximate result of Defendant's wrongful actions and inaction and the resulting Data Breach, Plaintiff and Class Members have lost the value of their Private Information. Private Information is a valuable commodity, as evidenced by numerous companies

which purchase Private Information from consumers, such as UBDI, which allows its users to link applications like Spotify, Twitter, or Apple Health and opt-in to paid opportunities to earn income, and Brave, which uses a similar business model, and by market-based pricing data involving the sale of stolen Private Information across multiple different illicit websites.

56. Top10VPN, a secure network provider, has compiled pricing information for stolen PII, including $160.15 for online banking details, $35.00 for credit reports, and $62.61 for passports. Standalone Yahoo email accounts have been listed for as little as $0.41, while banking logins are in the range of $500, and verified PayPal accounts with high balances are listed at as much as $2,000.

57. In addition, Privacy Affairs, a cyber security research firm, has listed the following prices for stolen PII:

| | |
|---|---|
| U.S. driving license, high quality: | $550 |
| Auto insurance card: | $70 |
| AAA emergency road service membership card: | $70 |
| Wells Fargo bank statement: | $25 |
| Wells Fargo bank statement with transactions: | $80 |
| Rutgers State University student ID: | $70 |

58. Additionally, Plaintiff and Class Members have lost the benefit of their bargains. Plaintiff and Class Members entered into agreements with Defendant under the reasonable but mistaken belief that Defendant would reasonably and adequately protect their Private Information from unauthorized disclosure and would not have entered into such agreements had they known that Defendant would not reasonably and adequately protect their Private Information. Plaintiff and Class Members have thus suffered actual damages in an amount at least equal to the difference in value between the healthcare and medical services that include reasonable and adequate data security that they bargained for, and the healthcare and medical services that do not that they actually received.

59. Defendant's wrongful actions and inaction directly and proximately caused the unauthorized disclosure of Plaintiff's and Class Members' Private Information, causing them to

suffer, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including:

a. The improper disclosure of their Private Information;

b. Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach;

c. Ascertainable losses in the form of deprivation of the value of their Private Information, for which there is a well-established national and international market; and

d. Ascertainable losses in the form of the lost benefit of Plaintiff and Class Members bargains with Defendant.

**CLASS ACTION ALLEGATIONS**

60. Plaintiff brings this action on her own behalf and all others pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure. Plaintiff intends to seek certification of a class initially defined as follows:

> All individuals whose Private Information was stored by Defendant MedLink and/or was exposed to unauthorized third parties as a result of the Data Breach.

61. Excluded from the proposed class are Defendant, including any entity in which Defendant has a controlling interest, are parents or subsidiaries, or which is controlled by Defendant, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendant. Also excluded are the judge and the court personnel in this case and any members of their immediate families. Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that the Classes should be expanded or otherwise modified.

62. *Numerosity*: The Class Members are so numerous that the joinder of all members is impractical. The disposition of the claims of Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in Defendant's possession, custody, or control, such as patient records.

63. *Commonality and Predominance*: There are questions of law and fact common to the Classes, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

i. Whether Defendant disclosed Plaintiff and Class Members Private Information, without authorization;

ii. Whether and when Defendant actually learned of the Data Breach;

iii. Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their private information had been compromised;

i. Whether Defendant violated the law by failing to promptly notify Plaintiff and Class Members that their private information had been compromised;

ii. Whether Defendant's conduct was negligent;

i. Whether Defendant knew or should have known that its data security systems, policies, procedures, and practices were vulnerable;

ii. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

i. Whether Plaintiff and Class Members suffered legally cognizable damages as a result of Defendant's conduct, including increased risk of identity theft and loss of value of their Private Information;

ii. Whether Defendant were unjustly enriched by their conduct; and

iii. Whether Plaintiff and Class Members are entitled to equitable relief, including injunctive relief.

64. *Typicality*: Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class Member, was misused and/or disclosed by Defendant.

65. *Adequacy of Representation*: Plaintiff will fairly and adequately represent and protect the interests of the Class Members. Plaintiff has retained competent counsel experienced

in litigation of class actions, including consumer and data breach class actions, and Plaintiff intends to prosecute this action vigorously. Plaintiff's claims are typical of the claims of other Class Members and Plaintiff has the same non-conflicting interests as the other Class Members. Therefore, the interests of the Class will be fairly and adequately represented by Plaintiff and her counsel.

66. *Superiority of Class Action*: A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Classes is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. There will be no difficulty in the management of this action as a class action. Damages for any individual Class Member are likely insufficient to justify the cost of individual litigation so that, in the absence of class treatment, Defendant's violations of law inflicting substantial damages in the aggregate would go un-remedied.

67. Class certification is also appropriate because Defendant have acted or refused to act on grounds generally applicable to Class Members, such that final injunctive relief or corresponding declaratory relief is appropriate to the Classes as a whole.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Negligence

68. Plaintiff repeats and incorporates herein by reference each and every foregoing allegation of this Complaint as if set forth fully herein.

69. In 2016, the FTC updated its publication, "Protecting Personal Information: A Guide for Business," which establishes guidelines for fundamental data security principles and practices for business. [24] Among other things, the guidelines dictate businesses should protect any personal customer information that they keep; properly dispose of personal information that

[24] Federal Trade Commission, *Protecting Personal Information: A Guide for Business* (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personalinformation.pdf.

is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems. The guidelines also recommend that businesses implement an intrusion detection system to expose breaches as soon as they occur; monitor all incoming traffic for activity indicating someone is attempting to infiltrate or hack the system; monitor instances when large amounts of data are transmitted to or from the system; and have a response plan ready in the event of a breach. [25] Additionally, the FTC recommends that companies limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures. [26]

70. Defendant owed Plaintiff and Class Members a duty of care in the handling of customers' Private Information. This duty included, but was not limited to, keeping that Private Information secure and preventing disclosure of the Private Information to any unauthorized third parties. This duty of care existed independently of Defendant's contractual duties to Plaintiff and Class Members. Under the FTC Guidelines, and other sources of industry-wide cybersecurity standards, Defendant are obligated to incorporate adequate measures to safeguard and protect Private Information that is entrusted to them in its ordinary course of business and transactions with customers.

71. Pursuant to the FTC Act (15 U. S. C. § 45), Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer information, treating the businesses' failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U. S. C. § 45. Orders from these actions further clarify the measures businesses are required

[25] *Id.*
[26] Federal Trade Commission, *Start With Security: A Guide for Business* (Jun. 2015) https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

to undertake to satisfy their data security obligations. [27]

72. Additional industry guidelines which provide a standard of care can be found in the National Institute of Standards and Technology's ("NIST") *Framework for Improving Critical Infrastructure Cybersecurity* (Apr. 16, 2018), https://nvlpubs. nist. gov/nistpubs/CSWP/ NIST. CSWP. 04162018. pdf. Among other guideposts, the NIST's framework identifies seven steps for establishing or improving a cybersecurity program (section 3. 2).

Those steps are:

> *Step 1: Prioritize and Scope*. The organization identifies its business/mission objectives and high-level organizational priorities. With this information, the organization makes strategic decisions regarding cybersecurity implementations and determines the scope of systems and assets that support the selected business line or process. The Framework can be adapted to support the different business lines or processes within an organization, which may have different business needs and associated risk tolerance. Risk tolerances may be reflected in a target Implementation Tier.
>
> *Step 2: Orient*. Once the scope of the cybersecurity program has been determined for the business line or process, the organization identifies related systems and assets, regulatory requirements, and overall risk approach. The organization then consults sources to identify threats and vulnerabilities applicable to those systems and assets.
>
> *Step 3: Create a Current Profile*. The organization develops a Current Profile by indicating which Category and Subcategory outcomes from the Framework Core are currently being achieved. If an outcome is partially achieved, noting this fact will help support subsequent steps by providing baseline information.
>
> *Step 4: Conduct a Risk Assessment*. This assessment could be guided by the organization's overall risk management process or previous risk assessment activities. The organization analyzes the operational environment in order to discern the likelihood of a cybersecurity event and the impact that the event could have on the organization. It is important that organizations identify emerging risks and use cyber threat information from internal and external sources to gain a better understanding of the likelihood and impact of cybersecurity events.
>
> *Step 5: Create a Target Profile*. The organization creates a Target Profile that focuses on the assessment of the Framework Categories and Subcategories describing the organization's desired cybersecurity outcomes. Organizations also may develop their own additional Categories and Subcategories to account for unique organizational risks. The organization may also consider influences and requirements of external stakeholders such as sector entities, customers, and

[27] Federal Trade Commission, *Privacy and Security Enforcement: Press Releases*, https://www.ftc.gov/news-events/media-resources/protecting-consumer-privacy/privacy-securityenforcement.

> business partners when creating a Target Profile. The Target Profile should appropriately reflect criteria within the target Implementation Tier.
>
> *Step 6: Determine, Analyze, and Prioritize Gaps*. The organization compares the Current Profile and the Target Profile to determine gaps. Next, it creates a prioritized action plan to address gaps – reflecting mission drivers, costs and benefits, and risks – to achieve the outcomes in the Target Profile. The organization then determines resources, including funding and workforce, necessary to address the gaps. Using Profiles in this manner encourages the organization to make informed decisions about cybersecurity activities, supports risk management, and enables the organization to perform cost-effective, targeted improvements.
>
> *Step 7: Implement Action Plan*. The organization determines which actions to take to address the gaps, if any, identified in the previous step and then adjusts its current cybersecurity practices in order to achieve the Target Profile. For further guidance, the Framework identifies example Informative References regarding the Categories and Subcategories, but organizations should determine which standards, guidelines, and practices, including those that are sector specific, work best for their needs.

73. In addition to their obligations under federal regulations and industry standards, Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Plaintiff and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems and networks, and the personnel responsible for them, adequately protected the Private Information of Plaintiff and Class Members.

74. Defendant owed a duty to Plaintiff and Class Members to design, maintain, and test its internal data systems to ensure that the Private Information in Defendant's possession was adequately secured and protected.

75. Defendant owed a duty to Plaintiff and Class Members to create and implement reasonable data security practices and procedures to protect the Private Information in their custodianship, including ensuring that their Private Information was not being disclosed without authorization to third-party hackers.

76. Defendant owed a duty to Plaintiff and Class Members to implement processes or safeguards that would detect an unauthorized disclosure of customer Private Information such as the Data Breach.

77. Defendant owed a duty to Plaintiff and Class Members to timely disclose if its computer systems and data security practices were inadequate to safeguard individuals' Private Information from unauthorized disclosure because such an inadequacy would be a material consideration in Plaintiff's and Class Members' decisions to entrust their Private Information to Defendant.

78. Defendant owed a duty to Plaintiff and Class Members to disclose in a timely and accurate manner when data breaches occur.

79. Defendant owed a duty of care to Plaintiff and Class Members because they were foreseeable and probable victims of any inadequate data security practices and systems. Defendant collected Private Information from Plaintiff and Class Members. Defendant knew that the unauthorized disclosure of Plaintiff's and Class Members' Private Information would cause them to incur damages.

80. Defendant breached their duties of care to safeguard and protect the Private Information entrusted to them by Plaintiff and Class Members. Defendant adopted inadequate safeguards to protect its Private Information from unauthorized disclosure and failed to adopt industry-wide standards set forth above in its supposed protection of the Private Information. Defendant failed to design, maintain, and test its computer system(s) to ensure that the Private Information was adequately secured and protected, failed to create and implement reasonable data security practices and procedures, failed to implement processes that would detect unauthorized disclosure, and otherwise breached each of the above duties of care by carelessly allowing unauthorized third parties to view, collect and exfiltrate Private Information, which led directly to the Data Breach.

81. Defendant breached the duties set forth in 15 U.S.C. § 45, the FTC guidelines, the NIST's Framework for Improving Critical Infrastructure Cybersecurity, and other industry guidelines. In violation of 15 U.S.C. §45, Defendant failed to implement proper data security procedures to adequately and reasonably protect Plaintiff's and Class Members' Private Information from unauthorized disclosure. In violation of the FTC guidelines, *inter alia*, Defendant did not protect the personal customer information that they were entrusted; lacked the

requisite understanding of their own computer systems' vulnerabilities—including what Private Information that system disclosed to unauthorized third parties; and failed to implement policies to correct security problems. In violation of the NIST's Framework, Defendant, *inter alia*, failed to adopt sufficient resources to identify and address such security gaps.

82. Defendant's failure to comply with applicable laws and regulations constitutes negligence per se.

83. As a direct and proximate result of Defendant's failure to adequately protect and safeguard the Private Information, Plaintiff and Class Members suffered damages. Plaintiff and Class Members were damaged because their Private Information was accessed by unauthorized third-party hackers without any prior authorization. Plaintiff and Class Members have subsequently lost the value of their Private Information, as well as the benefit of their bargains with Defendant.

84. Plaintiff and Class Members have suffered actual injury and are entitled to damages in an amount to be proven at trial but in excess of the minimum jurisdictional requirement of this Court.

**<u>SECOND CAUSE OF ACTION</u>**

**Breach of Implied Contract**

85. Plaintiff repeats and incorporates herein by reference each and every foregoing allegation of this Complaint as if set forth fully herein.

86. Plaintiff and Class Members entered into agreements for services with Defendant. In making those agreements, Defendant solicited and invited Plaintiff and Class Members to provide their Private Information to Defendant as a requirement of receiving those healthcare and medical services. Plaintiff and Class Members accepted Defendant's offers and provided their Private Information to enter the agreements. Inherent within those agreements was an implied contractual obligation that Defendant would implement reasonable and adequate data security to safeguard and protect the Private Information entrusted to them by Plaintiff and Class Members from unauthorized disclosure.

87. Thus, when Plaintiff and Class Members provided their Private Information to

Defendant in exchange for Defendant's services, they entered into implied contracts with Defendant under which Defendant agreed to and were obligated to reasonably protect their Private Information from unauthorized disclosure. Plaintiff and Class Members provided payment to Defendant, as well as their Private Information, under the reasonable but mistaken belief that any money they paid to Defendant in connection to its provision of its services would be used in part to provide reasonable and adequate data security for their Private Information.

88. This implied contract is acknowledged and memorialized in Defendant's customer-facing documents, including, *inter alia*, Defendant's public-facing Notice of Privacy Practices, wherein they state: that Defendant was "required by State and Federal law to" "maintain the privacy of health information that identified you" and "[a]bide by the terms of this notice" and that it would "notify you in the event there is a breach of unsecured PHI." [28]

89. Defendant require every patient to review their Notice of Privacy Practices prior to becoming a patient partaking in their services. Accordingly, the Notice of Privacy Practices and the privacy promises contained within are incorporated by reference into its contracts with its members, including Plaintiff and Class Members.

90. Despite these promises, Defendant did not provide reasonable and adequate data security for Plaintiff's and Class Members' Private Information and instead caused it to be disclosed to unauthorized third-party hackers. This was in direct contradiction to the promises Defendant made.

91. Defendant did not comply with state and federal statutes and regulations and did not comply with industry data security standards. In doing so, Defendant materially breached their obligations under implied contract.

92. That Defendant would implement such reasonable and adequate data security was a material prerequisite to the agreements between Plaintiff and Class Members. Reasonable consumers value the privacy of their Private Information, and do not enter into agreements for

[28] MedLink Georgia Privacy Policy, available at: https://medlinkga.org/patient-resources/ and https://medlinkga.org/wp-content/uploads/2024/07/Notice-of-Privacy-Practices-To-Give-To-Patients-1.pdf (last accessed July 6, 2026).

medical services with healthcare providers which are known not to protect customer data. Accordingly, Plaintiff and Class Members would not have entered into agreements with Defendant and would not have provided them with their sensitive Private Information, had they known that Defendant would not implement such reasonable and adequate data security.

93. As a result of Defendant's Data Breach, Plaintiff and Class Members have lost the value of their Private Information, as well as the benefit of their bargains. Plaintiff and Class Members entered into agreements with Defendant under the reasonable but mistaken belief that Defendant would reasonably and adequately protect their Private Information and would not have entered into such agreements had they known that Defendant would not reasonably and adequately protect their Private Information. Plaintiff and Class Members have thus suffered actual damages in an amount at least equal to the difference in value between the medical services that include reasonable and adequate data security that they bargained for, and the medical services that do not and that they actually received.

94. Plaintiff and Class Members fully performed their obligations under the implied contract by providing their Private Information and making payments to Defendant.

95. Plaintiff and Class Members have suffered actual injury and are entitled to damages in an amount to be proven at trial but in excess of the minimum jurisdictional requirement of this Court.

## THIRD CAUSE OF ACTION

### Unjust Enrichment/Quasi-Contract

96. Plaintiff repeats and incorporates herein by reference each and every foregoing allegation of this Complaint as if set forth fully herein.

97. Plaintiff and Class Members provided their Private Information and conferred a monetary benefit upon Defendant in exchange for healthcare and medical services. Plaintiff and Class Members did so under the reasonable but mistaken belief that part of their monetary payment to Defendant would cover the implementation of reasonable, adequate, and statutorily mandated safeguards to protect their Private Information from unauthorized disclosure. Defendant were enriched when they sold their services at a higher price than they otherwise would

have based on those reasonable but mistaken beliefs.

98. Defendant's enrichment came at the expense of Plaintiff and Class Members, who would not have paid for Defendant's services, or would have only been willing to pay substantially less for them, had they been aware that Defendant had not implemented reasonable, adequate and statutorily mandated safeguards to protect patient Private Information.

99. As a direct and proximate result of Defendant's wrongful actions and inactions, Plaintiff and Class Members have suffered damages in the form of their lost benefit of the bargains. Plaintiff and Class Members entered into agreements with Defendant under the reasonable but mistaken belief that it would reasonably and adequately protect their Private Information and would not have entered into such agreements had they known that Defendant would not reasonably and adequately protect their Private Information. Plaintiff and Class Members have thus suffered actual damages in an amount at least equal to the difference in value between the medical services that include reasonable and adequate data security that they bargained for, and the medical services that do not and that they actually received.

100. Defendant should not be permitted to retain Plaintiff's and Class Members' lost benefits, without having adequately implemented the data privacy and security procedures for itself that Plaintiff and Class Members paid for and that were otherwise mandated by federal, state, and local laws and industry standards. Defendant should not be allowed to benefit at the expense of consumers who trusted Defendant to protect their Private Information that they were required to provide to Defendant in order to receive Defendant's services.

101. As a direct and proximate result of Defendant's wrongful actions and inactions, Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial but in excess of the minimum jurisdictional requirement of this Court.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all of Class Members, respectfully requests that the Court enter judgment in her favor and against Defendant as follows:

1. For an Order certifying the Classes as defined herein and appointing Plaintiff and her Counsel to represent the Class;

2. For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' Private Information, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class Members;

3. For equitable relief compelling Defendant to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety and to disclose with specificity to Class Members the type of Private Information compromised.

4. For an award of actual damages, statutory damages, and compensatory damages, in an amount to be determined at trial;

5. For an award of punitive and treble damages, in an amount to be determined at trial;

6. For an award of costs of suit, litigation expenses and attorneys' fees, as allowable by law; and

7. For such other and further relief as this Court may deem just and proper.

Dated: July 6, 2026

Respectfully submitted,

*/s/ Sharon J. Zinns*

Sharon J. Zinns (Georgia Bar No. 552920)
ZINNS LAW, LLC
4243 Dunwoody Club Drive
Suite 104
Atlanta, Georgia 30350
Telephone: (404) 882-9002
Email: sharon@zinnslaw.com

Thiago M. Coelho (CA SBN 324715)*
*thiago.coelho@wilshirelawfirm.com*
Jennifer M. Leinbach (CA SBN 319699)*
*jennifer.leinbach@wilshirelawfirm.com*
WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, California 90017
Telephone: (213) 381-9988
Facsimile: (213) 381-9989
**Pro Hac Vice Application Forthcoming*

*Attorneys for Plaintiff and Proposed Class*

**DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of herself and all others similarly situated, hereby demands a jury trial on all claims so triable.

Dated: July 6, 2026

Respectfully submitted,

*/s/ Sharon J. Zinns*

Sharon J. Zinns (Georgia Bar No. 552920)
ZINNS LAW, LLC
4243 Dunwoody Club Drive
Suite 104
Atlanta, Georgia 30350
Telephone: (404) 882-9002
Email: sharon@zinnslaw.com

Thiago M. Coelho (CA SBN 324715)*
*thiago.coelho@wilshirelawfirm.com*
Jennifer M. Leinbach (CA SBN 319699)*
*jennifer.leinbach@wilshirelawfirm.com*
WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, California 90017
Telephone: (213) 381-9988
Facsimile: (213) 381-9989
**Pro Hac Vice Application Forthcoming*

*Attorneys for Plaintiff and Proposed Class*